## Hungerford *vs.* Bourne.—*June,* 1831.

Upon a bill against an alleged intruder for an account of the rents and profits of the complainant's estate, accruing during her minority, her guardian is not a competent witness to prove an agreement between himself and the defendant, that the defendant should keep the estate, and pay the rents to the complainant and her sister, who were jointly interested. It was the duty of the witness to have collected the rents, and accounted for them. He is therefore interested in sustaining the suit.

The objection to the competency of a witness, by whose proof, a mere interlocutory order, not the subject of an appeal, was obtained, is open to consideration in the Appellate Court, though more than nine months had elapsed, between the passage of the interlocutory order, and the time of taking the appeal from the final decree.

APPEAL from the Court of Chancery.

The bill in this case was filed by the appellee, *Dorcas G. Bourne,* against the appellant, *William E. Hungerford,* on the 21st of December, 1819.

The following statement of the case and the proceedings in Chancery, is extracted from the opinion of the judge, who pronounced the judgment of this court.

The bill states, that in the year 1807, a certain *Thomas Bourne* died, seized and intestate of certain lands, one-half of which came by inheritance to the complainant; and that during her minority, the appellant took possession of it, and either rented it to others, or cultivated it himself, under an agreement with a certain *James M. Taylor*, her uncle, with whom she lived, to pay therefor per *annum*, 4150 pounds of tobacco. The suit was instituted after she came of age; and with the bill, an account is exhibited of the alleged stipulated rent; the balance appearing on which, with interest on each year's rent, from the time it is supposed to have become due, is stated to be the quantity of tobacco claimed, with a prayer for an account of rents and profits, and for general relief.

The appellant in his answer, admits the title of the complainant to one-half of the land; but among other things denies, that he ever agreed with *James M. Taylor*, or any other person, to rent the land, or any part of it, at any price, or on any condition, or to pay the rent mentioned in the bill, or that he owes any part of the tobacco mentioned in the account exhibited with the bill, or that he ever took possession of, and cultivated the land *himself*, or rented it out to others, as charged in the bill; but admits, that on the death of *Thomas Bourne*, from whom the estate descended, he did enter upon the land as administrator, to finish the growing crop, and to receive from the tenants, the rents then due; and that he did at the particular request of his mother, who was entitled to one-half of the land, and of *James M. Taylor*, the relative and acting friend of the complainant, agree to rent out a parcel of the land for one year, with the express understanding that he was not in any way to be responsible for the rents, if the tenants should fail to pay. After testimony taken on both sides, among which was that of *James M. Taylor*, which was objected to on the ground

of interest, the Chancellor being of opinion that it was competent, and upon the whole of the evidence, considering the appellant an intruder upon the estate of the complainant, on the 26th of July, 1827, decreed an account to be taken of the rents and profits, on the principle, that whoever enters upon the estate of an infant, is considered in equity, as entering as guardian to such infant, and may be made to account for the rents and profits.

The account reported by the auditor, was excepted to among other things, on the ground, that it was in part founded upon the testimony of *James M. Taylor,* who was alleged to be an incompetent witness. And on the 16th of February, 1829, the Chancellor overruled the exceptions to the report, and decreed that the appellant should pay to the complainant, the amount stated to be due, or bring the same into court, to be paid to her. From which decree this appeal was made.

The cause came on to be argued before BUCHANAN, Ch. J., and EARLE, MARTIN, ARCHER, and DORSEY, J.

*Boyle,* for the appellant, contended,

1. If this suit can be supported in Chancery in the name of the complainant, it should have been against *James M. Taylor,* her guardian. *Act of* 1829, *ch.* 24, *sec.* 8. 1798, *ch.* 101, *sub-ch.* 12, *sec.* 4, 5, *and* 8. 2. An action of debt at common law, on the guardian's bond, might have been sustained, and where there is a remedy at law, Chancery will not interpose, except upon peculiar grounds. *Drury vs. Conner,* 1 *Harr. and Gill,* 229. 3. Where land has been rented out by a guardian, the ward, when of age, cannot maintain an action against the lessee, but the rents and profits must be accounted for by the guardian. *Truss vs. Old,* 6 *Randolph,* 556. 2 *Kent. Com.* 185, (5) 186, 187. 4. A bill to account in a case of this sort will not lie; it is brought by a ward after arriving at age, against a lessee (to whom the guardian is alleged to have rented the estate)

for the purpose of making such lessee account for the rents and profits, said to have accrued during the minority. 1 *Rol. Abr.* 121. 1 *Com. Dig. Acc. E.* 4, 189. To sustain a bill for an account, there must be mutual demands. *Dinwiddie vs. Bailey*, 6 *Ves.* 141. *Porter vs. Spencer*, 2 *Johns. Ch. Cases*, 169. *Smith vs. Marks*, 2 *Randolph,* 449. This court will not decree an account for rents, merely because they are due at law, but will do so, where a discovery is requisite to its being taken. 2 *Atk.* 282. 3 *Ib.* 124. Where there is a clear right to rent, but no remedy at law, as no *demesne* lands on which *to* distrain, equity will give relief. 1 *Ves. Sr.* 171. 5. If the defendant rented the land, he is not answerable as a bailiff. No person being answerable as such, for rents to an infant, except an intruder. *Newburgh vs. Bickerstaff*, 1 *Vernon*, 295. *Cary vs. Bertie, et al.* 2 *Ib.* 342. 6. *James M. Taylor* is not a competent witness; he is guardian to the infant complainant, and as such, has a direct interest in the event of the suit. *Doe vs. Williams, Cowp.* 621. *Forrester vs. Pegon*, 1 *M. and S.* 9. The objection to his competency does not come too late. *Harwood vs. Harwood*, 1806, *per Kilty, Ch. Johnson vs. Berry, per Kilty, Ch.* 1810. *Winder, et al. vs. Diffenderffer, per Bland, Ch.* 1830. *Strike vs. McDonald*, 2 *Harr. and Gill*, 240.

*Magruder* and *Brewer*, Jr. for the appellee.

There is nothing to show that *James M. Taylor* was guardian to complainant, at the time the land was leased to the appellant. The answer expressly denies, that defendant had any communication on the subject of renting the land, from the guardian *Taylor*, or even made a contract to that effect with him, or was responsible to him for the same.

1. The decree to account was conclusive upon the rights of the parties, and having been passed two years before the appeal, cannot now be reviewed. *McDonald vs. Strike*, 2 *Harr. and Gill*, 259. A decree to account, unless merely subsidiary to something else, must be appealed from within

the nine months. *Snowden vs. Dorsey*, 6 *Harr. and Johns.* 114. *Hagthorp vs. Hook*, 1 *Gill and Johns.* 309. In these cases, the account was only incidental to the relief asked, and not, as in this case, the *gist* of the action. The decree here to account, contains no reservation of the equities of the parties, as there would have been, if the Chancellor did not intend to settle their rights. There can be no doubt that rights of parties may be settled by decrees to account. 2 *Madd. Ch. Pr.* 347, 348. The appeal was taken from the final decree, and not the decree to account.

2. The defendant, in his answer, does not resist complainant's right to recover, on the ground of a responsibility to any one else, but because he had received no money. It appears that the defendant was in possession prior to the guardianship, and continued in possession after its termination. If defendant is to be excused on the ground that he contracted with complainant's guardian, he ought to show the authority at the date of the contract. But suppose he did contract with the guardian, now that the guardianship is determined, the ward may recover. The guardian cannot recover after the ward arrives at age, and therefore if the ward cannot recover, no one can. 2 *Fonb. Eq.* 234. *Conner vs. Drury*, 1 *Harr. and Gill*, 230. 3. An action at law could not have been maintained for these rents and profits against the present defendant; but if it could, the objection to the jurisdiction comes too late; it should have been taken by a demurrer to the bill. *Drury vs. Conner*, 1 *Harr. and Gill*, 230. *Gibbs vs. Clagett*, 2 *Gill and Johns.* 14. *Underhill vs. Van Courtlandt*, 2 *Johns. Ch. C.* 369. *Ludlow vs. Simond*, 2 *Caine's Cases in Error*, 38, 40, 52. *Livingston vs. Livingston*, 4 *Johns. Ch. C.* 290. 1 *Eden's Rep.* 190. *Taylor* is a competent witness. The decree in this case could not be used in evidence against him, even if it was shown, that he would be liable to complainant in the event of her failing in this case, which however, has not been done.

*Taney,* (Attorney General,) in reply.

1. The bill states a clear case for the interposition of a Court of Chancery, and consequently, it could not be demurred to; but the want of jurisdiction appears by the denial of its statements in the answer. The defence could only be set up in this way. It is because the complainant has not proved her case, that she is not entitled to relief, and not because the bill does not contain the necessary averments. 2. From the decree to account there could have been no appeal. *Dorsey vs. Smith,* 6 *Harr. and Johns.* 262. *Thompson vs. McKim,* 6 *Harr. and Johns.* 302. *Hagthorp vs. Hook,* 1 *Gill and Johns.* 307. The reasoning of the Chancellor which precedes the decree to account, forms no part of the decree. It merely indicates his then opinion, which he might afterwards take back. 3. But supposing complainant to be in the proper court, and the defendant liable if he received rents, is there any evidence to charge him? The evidence shows that *Mrs. Hungerford* was entitled to occupy the land the first year, after the death of *Thomas Bourne,* and after that, the appellant, as a matter of kindness, undertook to rent it, and receive the rents for *Taylor,* stipulating however, that he would not be responsible beyond his actual receipts. Reject the evidence of *Taylor,* and there is no proof in support of the account. He is the only person who speaks of rents received by *Hungerford,* and there is no pretence that he occupied the lands himself. *Taylor* is an incompetent witness upon the ground of interest. It was his duty to have collected these rents, and his bond as guardian, is responsible for them, or the annual value of the land. By establishing the claim against the present defendant, he discharges himself. If *Hungerford* entered upon the land at all, it was in virtue of an authority from *Taylor,* the guardian, and therefore he cannot be made to account to the ward. He could not, under those circumstances, be presumed to have entered as guardian. But suppose he entered wrongfully; if his entry, and possession afterwards, were ratified by the guardian, he cannot in that case, be an-

swerable for rents as guardian, upon the ground that he entered as an intruder. It is not material whether he has paid or not; if any thing is now due, it must be paid to *Taylor*, with whom the contract was made. But the bill does not charge a non-payment to *Taylor*, and complainant cannot recover by proving such a case.

BUCHANAN, Ch. J., delivered the opinion of the court.

After adverting to the statement of the case before set forth, the Judge proceeded:

As the case is presented to us, we do not feel ourselves authorised to consider the appellant as an intruder upon the lands of the complainant, and to treat him as her guardian, and as such, answerable to her for the rents and profits of the estate. *James M. Taylor* swears that *Thomas Bourne*, from whom the estate descended, died in the spring or summer of the year 1807, that the complainant, whose business he transacted, lived at that time with him, that some time after the death of *Thomas Bourne*, either the succeeding fall, or spring, or summer, he is not certain which, the appellant proposed to keep the whole of the lands of the late *Thomas Bourne*, and to pay one-half of the rents, (to be ascertained by persons chosen for that purpose,) to the complainant, and her sister who was then living and entitled to a part of the land, (the appellant's mother being entitled to the other half) to which he, *Taylor*, who is stated in the bill to be the uncle of the complainant, and with whom she at the time lived, agreed.

If looking to this testimony, and treating *Taylor* as a competent witness, it should be held, that such a letting by an uncle and friend of the complainant entitled to be her guardian, and with whom she lived, and who was in the habit of transacting her business, was, if he had not then been appointed guardian, unauthorised, and that the entering upon, and holding the land by the appellant under such an agreement, constituted him an intruder, and subject to be made answerable in equity, for the rents and profits as a guar-

dian; yet seeing from other evidence in the cause, that *Taylor* was appointed guardian to the complainant, and filed his bond as such, in the *Calvert* county Orphans Court on the the 8th of August, 1808, may it not be inferred in the absence of any thing to the contrary, that the agreement with the complainant, of which he speaks, was made after he was appointed guardian, and when he was clearly authorised to rent out the land? This would be perfectly consistent with that part of his testimony, in which he says that it was made in the fall, or spring, or summer, he is not certain which, next succeeding the death of *Thomas Bourne,* which was in the spring or summer of 1807. For if it was made at any time during the month of August, 1808, after the 8th, it was in the summer, and within the words of his testimony. Besides, he may have been appointed guardian some time before he gave his bond, (for the time of his appointment does not appear in the record,) and it is more reasonable to suppose, that he made the agreement after he was appointed guardian, and when he was authorised to make it, than before, and when he was not authorised, there being nothing in his evidence confining the agreement to a prior time, or leading to a different conclusion. Or, if it was made before *Taylor* received the appointment of guardian, yet as he was appointed long before any rents became due, and as it appears that he, from that time, received a portion of the rents for each year, up to the year 1814, for which credits are given in the exhibit filed with the bill, and in the report of the auditor, it would seem to follow, that he accepted the appellant as his tenant in the capacity of guardian, and received the rents in that character; and that, from the time of his appointment, the relation in which the appellant stood to him, was that of his tenant, as the guardian of the complainant. In either case, the appellant was in by authority; in the first, from the time of the original agreement; and in the latter, from the time that *Taylor* was appointed guardian, when a new relation commenced, and when no rents and profits had been received,

and is not to be treated as an intruder, nor liable to be call-
ed on as guardian, to account for the rents and profits. Nor
answerable to the complainant on his contract with *Taylor*,
to whom alone he is responsible; and if *Taylor* has viola-
ted his duty, or malconducted himself as guardian, her re-
medy is against him on his guardian's bond. But leaving
this view of the subject, and looking to the other evidence
in the record, it seems to us, that the testimony of *Taylor*
cannot stand with that of several of the other witnesses, par-
ticularly that of *James Wilson* and *Samuel Turner*, with
which it is wholly inconsistent; and taking the whole of
the evidence together, we think the weight of testimony is
against the complainant, and that the appellant did not take
possession of the land, and either rent it out to others, or
cultivate it himself, under an agreement with *Taylor*, to
pay a stipulated rent as charged in the bill; nor at any time
enter upon it, and occupy and enjoy it, or receive the rents
and profits to his own use, so as to charge him as guardian,
and that he had no other concern with it, than as the agent
of *James M. Taylor* and his mother, for which we think he
should not be made to account for the rents and profits.
*Drury vs. Conner*, 1 *Harr. and Gill*, 220.

But if it was otherwise, and taking the whole of the evi-
dence together, it would be sufficient to subject him to an
account for the rents and profits, yet without the testimony
of *Taylor* there is nothing to charge the appellant, and we
think it was incompetent and ought to have been rejected.
He was the guardian of the complainant. It was his duty
to collect the rents and account for them, and if he receiv-
ed and misapplied them, or they were lost, by any culpable
negligence or inattention to his duty, he is answerable on
his bond to the complainant, and is therefore interested in
sustaining this suit, and thereby exonerating himself from
liability. But it is said that this objection comes too late,
and that the appellant, to avail himself of it, should have ap-
pealed from the interlocutory decree of the 26th of July,
1827, (by which the rights of the parties are supposed to

have been settled,) within nine months from the time it was passed, the time prescribed by the act of 1785, *ch.* 72, *sec.* 27; whereas this appeal, which is from the final decree of the Chancellor, was taken on the 3d of June, 1829, almost two years after the date of the interlocutory decree. But to this we cannot yield our assent; the rights of the parties were not finally adjudicated by the interlocutory decree of the 26th July, 1827. It is true the Chancellor does say, that he "considers all the testimony in the case competent, and so far credible when taken altogether, as to entitle the plaintiff to recover." But that is not a decree finally settling any thing in controversy between the parties; but an expression only of the opinion of the Chancellor, upon which the decree for an account was founded. And the account when taken, might have been rejected by the Chancellor on further proof on more full consideration. The decree, therefore, directing an account to be taken, was a mere interlocutory order, from which an appeal could not properly have been taken. *Snowden and others vs. Dorsey and others*, 6 *Harr. and Johns.* 114—and *Hagthrop and wife and others vs. Hook's adm'rs*, 1 *Gill and Johns.* 270, are conclusive on this point, and as an appeal would not lie from the decree for an account, the whole case is open upon the appeal from the final decree.

DECREE REVERSED AND BILL DISMISSED
WITH COSTS IN BOTH COURTS.